STILLSON v. HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant.*

1. **Parent and Minor Child: Personal Injuries:** NEGLIGENCE: DAMAGES. If a child of tender years, in the presence of its father and by his direction, undertakes to cross a railroad track and is injured in the attempt, any negligence of which the father may be guilty in giving the directions is imputable to the child in an action against the railroad company to recover damages for the injury.

2. **Railroad:** OBSTRUCTION OF STREET BY TRAINS: FAILURE TO WHISTLE OR RING: NEGLIGENCE. The plaintiff, approaching a railroad track, found the street on which she was walking entirely obstructed by a train of cars standing across it. Several feet from the line of the street there was an opening, a few inches wide, between the rear car of this train and the rear car of another train which stood on the same track. Plaintiff undertook to pass through this opening, and, owing to a backward movement of one of the trains at that moment, was injured in the attempt. It was not shown whether this movement was the result of an impulse imparted by the locomotive, or was a gradual sliding back of the train down an incline, which existed at that part of the track, and it did not appear that any whistle was sounded or bell rung, nor that those in charge of the train knew that plaintiff was proposing or attempting to cross. In an action against the railroad company to recover damages for the injuries sustained, *Held,* 1st, The fact that the street was obstructed did not justify plaintiff's attempt. 2nd, Defendant was not in fault if it failed to ring the bell and blow the whistle. This is only required when a train is approaching a crossing. 3rd, There

was no evidence of negligence, on the part of the company, to submit to the jury. The negligence was on the plaintiff's side.

*Appeal from Hannibal Common Pleas Court.*—Hon. John T. Redd, Judge.

*Geo. W. Easley* for appellant.

*H. J. Drummond* for respondent.

Napton, J.—The injury, which this suit sought to redress, to a bright little girl of eight or nine years of age, remarkably sprightly and attractive, the pet of her father and of the entire village where they lived, is calculated to excite the sympathy of jurors and judges; but, in the administration of law, considerations of this sort must be discarded, and the case must be investigated and determined upon established legal principles applicable alike to all. The facts in this case, so far as they relate to the circumstances attending this unfortunate accident, are very few and simple, and established mostly by the witnesses for the plaintiff. There is, indeed, a mass of testimony of medical men in regard to the connection between the ill-health of the plaintiff, when suit was brought, and the injury which occurred eight years before, and the possibility of its having been occasioned by other causes. We shall omit any reference to this class of testimony, the question being one exclusively for the jury, and no points of law having been made on it in the instructions. The town of Brookfield in 1864, when this accident happened, contained about 150 inhabitants. The main street, about 100 feet wide, ran north and south through it, crossing the defendant's railroad at right angles. This road, running east and west, consisted of three tracks—the main track and two side-tracks south of the main track. The father of the plaintiff had a store-house on the south side of the railroad, east of the main street, and with his wife and daughter boarded at the hotel or eating-house of the

village, which was on the north side of all the railroad tracks, and west of the main street. Sometime in the morning of June 1st, 1864, (it is not material about the hour), Mr. Stillson left his store and crossed over to the hotel, where his wife and daughter were, and in doing so passed through an aperture left between the eastern and western-bound trains, on the south side-track, which he then found to be about twenty inches. After transacting the business which was the cause of this visit—probably to go to dinner—he was accompanied back by his little daughter, the plaintiff, who said to him as they walked along over the main track, where there were no cars, and over the first side-track, where there were either no cars or a wide space between them on the railroad-crossing, "Papa, how did you get over?" In answer to this question the father described to the child how he got over, and when they reached the second or south side-track, where the crossing on the main street was totally obstructed, he pointed out to his child the place where he got over, and she, saying, " I will beat you over to the store," tripped along ahead of him; and she found the space between the cars so close that, small and delicate as she was for her age, she had to turn sideways to get her body between the cars. From some cause the cars at this place had moved and diminished the space between them, and she was crushed between them at the waist. Her father was five or six feet behind her. This was not at the crossing on the main street, which was entirely obstructed by the train bound west, but was several feet east of the line of the street, and between the trains bound east and west. The father had crossed at this opening when he went over to the hotel, and found it about twenty inches; and another witness, who crossed through the aperture only five minutes before the accident, found it between fifteen and twenty inches wide. There was from the west of the main street a gradual declivity of the track towards the east, and at the time of the unfortunate accident there was a lighted locomotive

43]

at the west end of the train, preparing to start west.  The eastward-bound train was fastened by brakes, and a stick of wood under the wheel near the east end.  Of course the diminution of the aperture must have been occasioned either by some impulse imparted by the locomotive at the west end of the train, or by a gradual sliding back of the western-bound train, which was necessarily not fastened, because on the eve of starting.  There was some discrepancy in the testimony as to whether there were any cars at all on the north side-track; but this is evidently immaterial, as the accident occurred on the south side-track.

Upon this state of facts some questions of law obviously arise, which may be considered without any detailed examination of the instructions given to the jury on the trial in the circuit court.

The first question which naturally presents itself in view of the facts is whether the responsibility of the de-

1. PARENT AND MI-NOR CHILD : PER-SONAL INJURIES : negligence : damages.

fendant in this case is varied from that which is ordinarily exacted from it towards persons of mature years, by reason of the tender years of the plaintiff.  There are cases in which it is determined that the same degree of care is not to be expected or required from a person of immature age as would be required of one who had reached years of discretion; and, therefore, that what would be contributory negligence in the one case would not be so considered in the other.  The distinction was recognized by this court in *Koons v. Iron Mountain Railroad Company*, 65 Mo. 592.  These are, however, cases in which the father, guardian or other protector of the party injured is not present when the injury occurs.  In the present case the father and child were together, and it was not simply a permission on his part that his little daughter should cross the railroad at the point she attempted, but the exact place was pointed out to her by her father, and she was proceeding within his view to follow his directions when the injury happened.  If, under such circumstances, the father was guilty of negligence, that neg-

ligence must be imputable to the child in a suit by the child for damages. As was observed by the Supreme Court of Massachusetts in a similar action, (*Holly v. Boston G. L. Co.*, 8 Gray 132,) "she was under the care of her father, who had the custody of her person and was responsible for her safety. It was his duty to watch over her, guard her from danger and provide for her welfare; and it was her's to submit to his government and control. She was entitled to the benefit of his superintendence and protection, and was consequently subject to any disadvantages resulting from the exercise of that parental authority which it was both his right and duty to exert. Any want of ordinary care on his part is attributable to her in the same degree as if she was wholly acting for herself." In *Waite v. N. E. Railway Co.*, 96 Eng. C. L. 728; *s. c.*, El. B. & E. 719, the question was whether, in an action by an infant for injuries caused to him by the negligence of the defendant, it could be set up by way of defense that the negligence of the person in charge of the infant contributed to the accident. The court of Queen's Bench held that it could, and in this opinion the court of Exchequer Chamber concurred. Williams, J., said: "There was here, as it seems to me, from the particular circumstances of the case, an identification of the plaintiff with the grandmother, whose negligence is, therefore, an answer to the action. The person who has charge of the child is identified with the child. If a father drives a carriage, in which his infant child is, in such a way that he incurs an accident, which by the exercise of reasonable care he might have avoided, it would be strange to say that, though he himself could not maintain an action, the child could." In *Ohio & Mississippi Railroad v. Stratton*, 78 Ill. 88; *s. c.*, 3 Cent. L. J. 415, the Supreme Court of Illinois held that the negligence of the parent or guardian having in charge a child of tender years, where it is the proximate cause of the injury by unnecessarily and imprudently exposing it to danger, prevents any recovery from the carrier cor-

poration.    In the present case the inquiry should have been whether the father was guilty of any contributory negligence, and whether such negligence, if any there was, was the proximate cause of the injury.

The next conspicuous and important fact in this case is that the injury did not occur at any street-crossing, but 2. RAILROAD: ob- on a part of the track where there was not struction of street by trains: failure even a private or occasional pathway, and to whistle or ring: negligence.    where, consequently, the defendant had a right to presume that no one would attempt to cross.    It is true the street-crossing was entirely obstructed by the train, which obstruction the municipal authorities of the town might at any time have prohibited, and for which the defendant might have been held liable in damages for any inconvenience occasioned by such obstruction, but this obstruction did not authorize one who was about to cross to attempt to do so at any accidental opening between the cars, either of that train or of the adjoining one, except at the peril of the person so attempting to cross.    The obligations, rights and duties of railroad companies and travelers crossing them are mutual and reciprocal, and no greater degree of care is required of the one than of the other. *Harlan v. St. L., K. C. & N. R. R.; Continental Imp. Co. v. Stead,* 95 U. S. 165.    Whilst the highest degree of care should be exacted from those who operate such dangerous machinery, a corresponding obligation is imposed on the public, outside of the passengers on the train, to observe the like caution.    *Harlan v. St. L., K. C. & N. R. R. Co.,* 65 Mo. 22.    It has heen held 'that the neglect of the engineer of a train to sound its whistle or ring its bell on nearing a street-crossing does not relieve a traveler in the street from taking ordinary precautions for his safety; that he is bound to use his senses, to listen and to look, in order to avoid any possible accident from an approaching train, and if he fails to do so, he takes the risk.    *Railroad Company v. Houston,* 95 U. S. 697; *s. c.,* 6 Cent. Law Jour. 132.

But here there was no street-crossing. The space left between the two trains, even when the father of plaintiff went over to the hotel, (twenty inches,) would not indicate any invitation even to foot-passengers. There was no evidence in the case that any person, other than the father of plaintiff and one other person, (who was a witness for defendant,) had ventured to cross at that point, and it is clear that if the father had preceded his child, so as to observe the diminished size of the aperture, he would not have advised her to attempt a crossing. Certainly, if he observed the lighted locomotive at the west end, and made an attempt to cross himself, or advised his child to attempt it, its recklessness would have been obvious. The question of negligence, on the one side or the other, was undoubtedly for the jury, but there must be some evidence on which to base instructions to a jury. After a careful examination of the testimony in this case, aided by the maps in the record, we have been unable to conjecture in what respect it is claimed that there was negligence on the part of the defendant. It does not appear that any officer or servant of the road was aware that the plaintiff, or any one else, was proposing or attempting to cross at the point where the injury to plaintiff occurred. It does not appear that any bell was rung or whistle sounded; but this is only required when approaching a crossing. The train was about to leave unobstructed the street-crossing, over which several of its cars extended. The eastern-bound train was securely fastened, and the stick of wood under the wheel had to be taken out before the little girl could be extricated. The western-bound train, being about to start, was, of necessity, not locked. That, when the locomotive was fired, this train might recede a few feet is not unlikely, and, indeed, seems the only rational solution of the contact of the two trains. Had the managers of this train, then, any right to suppose that, east of the street-crossing, the slight opening between it and the eastern-bound train, never over twenty inches, would invite pedes-

trians to cross through? Was it a customary place to cross, or were not the plaintiff and her father trespassers? It is useless to analyze the instructions in detail. From what has been said it will be apparent wherein they are objectionable.

Judgment reversed and cause remanded. The other judges concur.

REVERSED.