Frick v. The St. Louis, Kansas City & Northern Railway Company.

---

FRICK V. THE ST. LOUIS, KANSAS CITY & NORTHERN RAILWAY COMPANY, *Appellant*.

1.  **Demurrer to Evidence.** In passing upon a demurrer to evidence, the court is required to make every inference of fact in favor of the party offering the evidence, which a jury might, with any degree of propriety, make in his favor; and if when viewed in this light it is insufficient to support a verdict in his favor, the demurrer should be sustained. But the court is not at liberty, in passing on the demurrer, to make inferences of fact in favor of the defendant, to countervail or overthrow either presumptions of law or inferences of fact in favor of plaintiff. That would clearly be usurping the province of the jury.

2.  **Railroads:** RUNNING OF TRAINS WITHIN CITIES: CARE REQUIRED. In running a railroad train within the limits of a town or city, care should always be used by the servants of the company—the degree to be proportioned to the danger to be apprehended of inflicting injury on others. At street crossings a high degree of vigilance should be exercised. The signals required by law for the protection of travelers upon the highway should be given, and the servants of the

| | |
|---|---|
| 75 | 595 |
| 96 | 281 |
| 75 | 595 |
| 98 | 19 |
| 75 | 595 |
| 36a | 619 |
| 75 | 595 |
| 101 | 54 |
| 75 | 595 |
| 104 | 227 |
| 105 | 379 |
| 75 | 595 |
| 48a | 227 |
| 75 | 595 |
| 114 | 619 |
| 75 | 595 |
| 124 | 290 |
| 59a | 155 |
| 59a | 634 |
| 75 | 595 |
| 64a | 579 |
| 75 | 595 |
| 133 | 603 |
| 75 | 595 |
| 137 | 245 |
| 75 | 595 |
| 140 | 634 |
| 75 | 595 |
| 83a | 542 |
| 75 | 595 |
| 159 | 279 |
| 84a | 419 |
| 75 | 595 |
| 177 | ²475 |
| 75 | 595 |
| 95a | ²744 |

company in charge of the train should be at their posts, observant of the track, and ready at a moment's notice to avert, if possible, any apprehended danger.  A less degree of vigilance will ordinarily be required between streets than at crossings or when the train is running longitudinally in a street; but some vigilance is required even there, and the degree will necessarily vary with the attendant circumstances.  In any case, the requisite degree of vigilance may be properly designated by the words " ordinary care," that is, such care as would ordinarily be used by prudent persons performing a like service under similar circumstances.

3. —— : CASE ADJUDGED : QUESTION FOR THE JURY.  In a suit brought on behalf of a child two years of age against a railroad company to recover damages for injuries sustained by being run over by a train within the limits of a city and between two streets, the testimony was conflicting as to the length of time the child was on the track before she was run over, but the track was level, the view between the streets was unobstructed, the road was unfenced, there were dwellings on either side, there was a path leading across the track near the spot where the injury occurred, and the train was approaching a crossing.  Held, that in view of all these circumstances, if the servants of the company in charge of the train saw, or by the exercise of ordinary care could have seen the child in time to avoid injuring her, and failed to do so, the company was liable; and whether they were using such care was a question of fact for the jury.

4. —— : RIGHT TO A CLEAR TRACK : LIABILITY FOR INJURIES.  The general doctrine is that a railroad company is entitled to a clear track.  But if there is reason to apprehend that the track may not be clear, the company's servants operating a train must not act upon the assumption that it is clear.  If they do, the company will be responsible for the consequences.

5. —— : NEGLIGENCE : INSTRUCTION.  An instruction given by the trial court declared it to be the duty of railroad companies " to exercise the greatest caution and skill in the management of their business."  Held, that although this degree of caution and skill can, perhaps, only be exacted when the relation of passenger and carrier exists, and the instruction may, therefore, be inapplicable to the present case, yet under the circumstances, (which are detailed in the opinion,) the judgment should not for this reason be reversed.

6. —— : —— : DANGEROUS RATE OF SPEED : QUESTION FOR THE JURY.  In cases where what constitutes a proper rate of speed for a railroad train depends upon the length and character of the train, the location and particular surroundings of the track and other circumstances, and no law or ordinance regulating the speed of trains is in evidence, whether the rate of speed is improper or dangerous is a question of fact for the jury.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

The train in question consisted of ten cars pushed by a locomotive, which also drew a caboose after it. Three of the cars were loaded with stone. The rest were empty. The train came from the east. The accompanying diagram shows the scene of the injury.

*Wells H. Blodgett* for appellant.

The plaintiff not being where she had a lawful right; not being where the defendant's servants were bound to look out for her, or expect her to be, the defendant's duty toward the child began only when its servants discovered her upon the track. Their duty did not begin when she could have been discovered, if the men in charge of the train had been expecting her, or if they had been specially charged with the duty of keeping a lookout for her. The question of when Mrs. Hahn discovered the child was wholly immaterial. The real questions for determination were: When did the men on the train see the child, and what efforts did they then make to stop? but on those material inquiries the plaintiff offered no testimony. If, in operating a train upon its private right of way, and while its servants are engaged about their usual and ordinary labors, they come so close upon a child that after it is discovered it is impossible for them, with all their efforts, to stop the train in time to save the child from injury, we cannot understand how, under those circumstances, it could be said that they had failed in the performance of any duty that they owed the child, because it seems well settled, both on reason and authority, that the persons in charge of the train had a right to act on the presumption that no child would be there. *Mulherrin v. R. R. Co.*, 81 Pa. St. 375; *Bannon v. R. R. Co.*, 24 Md. 125; *Maschek v. R. R. Co.*, 71 Mo. 276; *Gaynor v. R. R. Co.*, 100 Mass. 214; *Hughes v. R. R. Co.*, 66 Mo. 325; *Turner v. Thomas*, 71 Mo. 596; *Kay v. R. R. Co.*, 65 Pa. St. 276; *Morrissey v. R. R. Co.*, 126 Mass. 377; *Singleton v. R. R. Co.*, 7 C. B. (N. S.) 289; *Phil. & Reading R. R. Co. v. Hummell*, 44 Pa. St. 378; *Cauley v. R. R. Co.*, 11 Reporter, 67; *Meeks .v. R. R. Co.*, 52 Cal. 602.

*John McGaffey, Louis A. Steber* and *Louis Gottschalk*

for respondent, cited *Whalen v. R. R. Co.*, 60 Mo. 323; *McKeon v. R. R. Co.*, 43 Mo. 405; *Meyers v. R. R. Co.*, 59 Mo. 231; *Karle v. R. R. Co.*, 55 Mo. 482; *Bell v. R. R. Co.*, 72 Mo. 57; *Smith v. R. R. Co.*, 25 Kas. 738; *s. c.*, 13 Cent. L. J. 118; 20 Am. L. Reg. N. S. 559; *Washington v. R. R. Co.*, 17 W. Va. 190; *s. c.*, 23 Alb. L. J. 414; *Isabel v. R. R. Co.*, 60 Mo. 475.

HOUGH, J.—This was an action in the name of Lulu Frick, a minor, by her next friend, to recover damages for personal injuries sustained by her, by reason of having been run over by a gravel train of the defendant, midway between Grand Avenue and Theresa street, in the city of St. Louis. The train which inflicted the injury consisted of ten flat cars, seven of which were empty and three loaded with stone, propelled by an engine in the rear thereof, to which were attached a tender and a caboose.

The negligence of the defendant, which, it is alleged, occasioned the injury, is thus stated in the petition: "That immediately before said accident occurred, and while said train was moving toward the said Lulu, the servants and employes of defendant in charge of said train were duly warned of the approaching danger to said child by one Mrs. Hahn, who ran rapidly toward said train, and who, by loud cries and violent gestures, besought said servants and employes to stop said train of cars; but the said servants and employes carelessly, negligently and recklessly disregarded said warning, although they had ample time and means to stop said train in season to avert said accident; that the said injuries to the said Lulu Frick, resulting in the loss of her arm and leg, were caused by the carelessness and negligence of defendant, its servants and employes, in neglecting and failing to fence the said road, or place watchmen along the same, whereby the said Lulu Frick was permitted to wander upon said track, and the negligent and reckless disregard of the warning aforesaid, and in failing and neglecting to observe or notice the said

Lulu Frick upon said track, or provide any watchmen upon the rear end of said train, to see that said track was clear, and in causing said train to be moved then and there at a dangerous speed; that said Lulu Frick was in full view of said train of cars for a considerable length of time before said train of cars reached her; that by the exercise of ordinary prudence, care or watchfulness upon the part of the employes in charge of said train, the said Lulu would have been observed, the train stopped and the accident averted."

The plaintiff was a little more than two years of age, when injured, and was quite active. She resided with her parents about two hundred feet north of the defendant's track.

Mrs. Maggie Hahn, who resided in the house next to that of plaintiff's parents, testified that a short time previous to the accident, which occurred between nine and ten o'clock in the morning, she left her house with her little boy to look for her cow; that she went straight south to the railroad track, leaving a path which runs from the vicinity of plaintiff's house across the railroad a little to her right. She then walked west along the railroad to Grand Avenue, a distance of about three hundred feet, and not finding her cow there, she sent her son to the next crossing, the distance to which is not stated, and when he returned, he said to her, that a train was coming—to get off the track. She immediately turned, saw the train in question, and also saw Lulu Frick, the plaintiff, standing in the middle of the track, five or six feet west of where the path crosses the track. The cars were then about one hundred and fifty or one hundred and sixty feet from the child, and were moving about as fast as witness could run. She at once ran toward the child, waiving her hand to attract the attention of the men on the train, calling to them to stop, that there was a child on the track, and calling also to the child to get off the track. The child attempted to get off, but was run over by several cars, which mangled

one leg and arm, which were afterward amputated. The track was level and almost straight, and the witness said the child could have been seen a great distance. There was a brakeman on the front car, and several other persons between that car and the engine. A locomotive engineer and machinist testified that the train could have been stopped in seventy-five feet after the engineer received the signal, if running at four miles per hour, and in ninety-five feet if running at five miles per hour. How the plaintiff got upon the track does not appear. The witnesses supposed that she followed Mrs. Hahn. The defendant demurred to this evidence. The demurrer was overruled, and this action of the court is alleged as error.

In the case of *Buesching v. The St. Louis Gaslight Co.*, 73 Mo. 219, 231, this court said : " In passing upon a demurrer

1. DEMURRER TO EVIDENCE. to the evidence, the court is required to make every inference of fact in favor of the party offering the evidence, which a jury might, with any degree of propriety, have inferred in his favor, and if, when viewed in this light, it is insufficient to support a verdict in his favor, the demurrer should be sustained. *Wilson v. Board of Education*, 63 Mo. 137. But the court is not at liberty, in passing on such demurrer, to make inferences of fact in favor of the defendant, to countervail or overthrow, either presumptions of law, or inferences of fact, in favor of plaintiff; that would clearly be usurping the province of the jury."

As the train in question was moving through the suburbs of a city between two streets about seven hundred feet apart, along an unfenced track with several dwellings on either side thereof, and as the view of the track in front of the train was unobstructed, and as the law requires the bell to be rung when the train approaches within four hundred and forty feet of a public crossing and kept ringing until it crosses the same, and as the train at the time Mrs. Hahn first saw it, was within a few feet of the place where it was the duty of the trainmen to commence ringing the

bell and to observe whether any persons were approaching the crossing, and as Mrs Hahn was on the track at the crossing, waiving her hands and hallooing, and as the child was standing in the center of the track in a direct line between the train and Mrs. Hahn one hundred and fifty or one hundred and sixty feet from the train, and the train could have been stopped within ninety-five feet, the jury might fairly infer that the men in charge of the train saw, or by the exercise of ordinary care could have seen, the child, in time to have stopped the train before it ran over the child. Besides, it appears that the child was near a path which crossed the railroad track, and although no person had a right to go upon or across the defendant's track at that place, without the consent of the company, yet the presence of that path was itself a warning to the servants of the company that persons were in the habit of trespassing upon the track at that point, and that at least as long as the track remained unfenced, they might reasonably apprehend a continuance of such trespassing. It is true the law does not require fences to be erected at such places, but the company may lawfully erect them if it so desires. *Edwards v. Hann. & St. Jo. R. R. Co.*, 66 Mo. 567. We are of opinion, therefore, that the demurrer to the evidence was properly overruled.

The defendant then introduced testimony showing that there were only four servants of the company in charge of the train—engineer, fireman, brakeman and conductor. Two boys having no connection with the train were on the second or third car from the west end. The conductor was in the caboose at the time the alarm was given, the engineer and fireman were on the engine, and the brakeman was on the front car. The defendant's evidence tended to show that after a signal given to stop the train it could not be stopped in a distance less than its length, which was about three hundred and sixty feet. Some of the testimony on this point was that it could be stopped within from two hundred to five hundred feet, depending upon

the exact rate of speed, the amount of steam, the dryness of the rails and the position of all the employes at the moment of the warning. It was admitted that the train was running on a level track at the time plaintiff was injured, and it was admitted by the plaintiff that the engineer of the train did all in his power to stop the train, after receiving the signal from the brakeman. Neither the engineer nor the conductor saw the child before it was run over. The fireman, who was on the left side of the engine, ringing the bell, testified that he did not see the child to know what it was, until about the time the train struck it.

The brakeman, who was on the front car and nearest the child, testified as follows:

"I was on the west end of the car and at my brake, and when I saw the child on the track I gave the engineer signals to stop. I gave the signal with my hand and arm (indicating a downward motion). I saw the child upon the track when the train was about a car and a half or two car-lengths from it. The cars are thirty feet long, and that would make it forty-five or sixty feet. I saw a woman up at Grand Avenue. I did not understand anything she said. I saw the child first, but I saw them both about the same time. I did not understand the meaning of the words or gestures made by the woman. I did not pay much attention to her. When I discovered the child I gave a downward signal, either with one hand or both; either would be proper. That signal means to stop; I also set my brake. When I gave the signal the engineer called for brakes. He gave one short sound of the whistle. I also felt the slack taken up from the other end of the train, which would indicate that he was trying to stop, and that he had reversed the engine. I heard the whistle before I felt the slack taken up. It was not over half or a quarter of a minute after I heard the whistle before I felt the slack taken up; it was right quick after it. After I gave the signal with my hands, the engineer called for brakes right away. He did it immediately. After I set the brake on

the first car I ran back and set the brake on the next car behind me. I have been four years railroading, and worked a year and a half on a construction train. From my experience in railroading and in handling and moving a construction train, such as that was, I know it was not possible to stop that train after the child was discovered before it was run over. After I had set the brake on the front car, and gone back and set the brake on the next car, there was nothing else that I could do to stop the train before the child was run over."

*Cross-examined :* " I am still in the employ of defendant. I first saw the child near the corner of the fence. She was just climbing up on the rail. She just had one foot or one leg over the rail. She was not standing in the middle of the track. She did not get in the middle of the track at all that I saw. When I first saw her she was just climbing up over the rail. The first thing I did was to give the signal to stop, and then I set my brake. I did not look at the child all the time; I attended to my business. I do not know how far we were from Grand Avenue. I think we were near the middle of that block. I may have been a little excited. I could see up the track to Grand Avenue, and could have seen Mrs. Hahn while I was putting on my brake. I saw the child before I saw the woman. I saw the woman while I was putting on my brake, but I did not see her until after I had seen the child. My face was in that direction when I was setting up the brake. I was not watching the woman, but I could see what she was doing. The child was run over opposite the corner of that fence, about the middle of the block. I do not know that the child was standing in the middle of the track before I saw it. I don't think the child was in the middle of the track at all. I have sworn that when I first saw the child it was climbing over the rail. I think now she was just getting on the track. She was not in the middle of the track. I think we were moving at the time about five miles an hour. As near as I can

judge, we were running five miles an hour." The foregoing is all of the brakeman's testimony which is material to the case.

At the instance of the plaintiff the following instructions were given:

1. It is no evidence of negligence on the part of defendant that it had not fenced its road at the locality where the alleged injury occurred. But if the jurors find from the evidence that defendant, its agents or employes, notwithstanding said road was not required to be fenced, could, by the exercise of ordinary prudence and care, have avoided or prevented the injury to plaintiff, then they should find for plaintiff.

2. Railroad companies, owing to the dangerous character of the machinery and vehicles they operate, will be held to the greatest caution and skill in the management of their business, but this extraordinary degree of care and skill on their part will not exonerate others who have been wanting in prudence or guilty of negligence; and hence, as a general rule, a railroad company cannot be held liable for negligence or want of caution or skill in a case wherein it is shown that the party seeking to recover has himself been guilty of negligence or want of care or prudence, directly contributing to the injury complained of. This rule, however, does not apply when the party plaintiff is an idiot insane person or an infant of such tender years as to be incapable of taking care of himself or herself, or incapable of apprehending danger, or of the exercise of prudence or foresight in avoiding danger. In this case the child, Lulu Frick, was incapable of contributory negligence, and the only question for the jury to consider, in determining the liability of the defendant, is as to whether the accident complained of was the result of negligence, or want of care or skill, on the part of defendant's employes.

3. If the jury find for the plaintiff, they should, in estimating the amount of damage, take into consideration

the age and situation of plaintiff, her bodily suffering and mental anguish resulting from the injury received, and the loss sustained by reason of such injuries, and the extent to which she will be thereby disabled from ever earning her own living.

At the request of the defendant, the court gave the following instructions :

2.    Defendant was not required to have a fence along the sides of its track at the place where the child was injured ; and if the jury find from the evidence that she got upon the track and was injured in direct consequence of there being no fence along the sides of the said railroad at said place, then she cannot recover in this action.

4.    It was not negligence on the part of defendant's servants to disregard the cries and warnings of Mrs. Hahn before they understood and knew the meaning of such cries and warnings ; and if the jury find from the evidence that plaintiff was injured in direct consequence of a failure on the part of defendant's servants to obey such signals before they knew or understood the purpose for which they were made, then the finding must be for defendant.

5.    If the jury believe from the evidence that the persons in charge of the train were exercising ordinary care in running, conducting and managing the same, and that they did not discover the child upon the track, or see her approaching the same, in time to prevent the injury complained of, then plaintiff cannot recover in this action, and the finding must be for defendant.

6.    Defendant had a lawful right to run its trains upon the track at the place the injury occurred, either forward or backwards, and the fact that said train was being run at said time with the engine in the rear of the flat cars, does not constitute any negligence on the part of defendant, or on the part of those in charge of said train.

7.    If, from all the facts and circumstances in evidence, you believe that the injury to the said Lulu Frick was the result of accident or misadventure, without negligence on

the part of those in charge of the train, then the finding must be for defendant.

8. There is no evidence tending to show that plaintiff was recklessly or wantonly injured by those in charge of defendant's train.

The court, of its own motion, gave the following:

1. If the jury believe from the evidence that the injuries mentioned in this petition were inflicted upon plaintiff by defendant, or its employes, and that, by the exercise of ordinary care, skill or prudence on the part of such employes, the accident would not have occurred, then the jury will find for plaintiff.

2. If the jury believe from the evidence that defendant, through the negligence or carelessness of its employes, inflicted upon plaintiff the injuries mentioned in the petition, they will find for plaintiff, and assess her damages at such sum as they may believe she is entitled to, not exceeding the amount claimed in the petition.

3. Defendant was not required to employ watchmen, except at public crossings, to prevent children or other persons from getting upon its track, and its failure to employ watchmen for this purpose was not negligence; and if the jury should find from the evidence that plaintiff was injured in direct consequence of defendant's failure to employ such watchmen, plaintiff cannot recover, and the finding must be for defendant.

The only instructions asked by the defendant, and refused by the court, which it will be necessary to notice, are the following:

2. Although the jury may believe from the evidence that plaintiff was run over and injured by a train of defendant's cars, yet that fact does not authorize the jury to find a verdict for plaintiff; and unless it has been proved, to the satisfaction of the jury, that after she got upon the track, or her dangerous situation was discovered, the train could have been stopped in time to have prevented the

cars from running over her, then the finding must be for defendant.

4. There is no evidence tending to show that the train in question was being run at a dangerous or unlawful rate of speed at the time plaintiff was injured.

There was a verdict and judgment for the plaintiff for $10,000. This judgment was formally affirmed by the court of appeals, and the defendant has appealed to this court.

The plaintiff in this case being an infant of tender years, to whom no contributory negligence can be imputed, the only point remaining to be determined is, whether the question as to the defendant's negligence was properly submitted to the jury. No suggestion has been made that there was any negligence on the part of the parents of the plaintiff, which would preclude a recovery by her, nor does this record warrant any such suggestion. *Koons v. St. L. & I. M. R. R. Co.*, 65 Mo. 592; *Stillson v. Hann. & St. Jo. R. R. Co.*, 67 Mo. 671; Cooley on Torts, 682; *Kay v. Penn. R. R. Co.*, 65 Pa. St. 269.

The defendant contends that the first and second instructions given at the request of the plaintiff, and the first and second instructions given by the court of its own motion, are erroneous, in that they fail to tell the jury that the defendant was liable only in case its servants failed to exercise ordinary care to prevent the injury, after they became aware of the danger to which the plaintiff was exposed. This would undoubtedly be a proper qualification of the instructions referred to, if this were the case of an adult who had been guilty of contributory negligence; but such a qualification would be manifestly improper in this case, unless the servants of the defendant were under no obligation whatever to observe the track between Grand avenue and Theresa street, in order to avoid injuring such persons as might be upon the track, between said streets, even without the permission of the company.

2. RAILROADS: running of trains within cities: care required.

It has been repeatedly held by this court that greater care is to be exercised by the persons managing a train of cars, within the limits of a town or city, than is required in the country. *Brown v. R. R. Co.*, 50 Mo. 461; *Maher v. R. R. Co.*, 64 Mo. 276; *Hicks v. R. R. Co.*, 64 Mo. 439; *Harlan v. R. R. Co.*, 65 Mo. 24. In *Brown v. R. R. Co.*, *supra*, it was said that in towns caution should always be used, and the degree of care to be exercised must of course be proportioned to the danger to be apprehended of inflicting injury on others. At street crossings, in a town or city, where the public have a right to be, and where people are constantly passing and re-passing, a high degree of vigilance should be exercised. The signals required by law for the protection of travelers upon the highway, should be given, and the servants of the company in charge of the train should be at their posts, observant of the track, and ready at a moment's notice, to avert, if possible, any apprehended danger. *Kelley v. Hann. & St. Jo. R. R. Co.*, *ante*, p. 138. The rule laid down in *Brand v. S. & T. R. R. Co.*, 8 Barb. 368, cited by defendant's counsel, which was a case of injury in a street, was disapproved in the case of *Johnson v. R. R. Co.*, 6 Duer 633, and also by the court of appeals in the same case, 20 N. Y. 65.

A less degree of vigilance will ordinarily be required between the streets of a town or city, than will be required at the street crossing, or when running longitudinally in a street; but, undoubtedly some vigilance is required even between the streets, and the degree required will necessarily vary with the attendant circumstances. In any case the requisite degree of vigilance may be properly designated by the words " ordinary care," that is, such care as would be ordinarily used by prudent persons performing a like service under similar circumstances.

In the case before us, the testimony is conflicting as to the length of time the plaintiff was on the track before she was run over, but the track was level, the view between the streets was unob-

3. ——: case adjudged : question for the jury.
39—75

structed, the road was unfenced, there were dwellings on either side, there was a path leading across the track, and the train was approaching a crossing; and we are of opinion, that if the servants of the defendant saw, or by the exercise of ordinary care under the circumstances stated, could have seen the plaintiff in time to have avoided injuring her, and failed to do so, the defendant is liable; and whether the servants of the defendant were, about the time of the injury, using such care, was a question of fact for the jury; and the fifth instruction given at the request of the counsel for the defendant, shows that they so regarded it. *P. & R. R. R. Co. v. Hummell*, 44 Pa. St. 377. The fact that the road was not fenced does not give a right of action, any more than any one of the other facts mentioned, would give a right of action, and it is clear that no one of them would; but it is the duty of vigilance, imposed upon the servants of the defendant by all these circumstances combined, and the absence of such vigilance, resulting in injury, which gives a right of action.

The rule here laid down is not in conflict with the general doctrine that a railroad company is entitled to a clear track. When there is reason to apprehend that the track may not be clear, notwithstanding the right of the company to have it clear, persons operating a train cannot act upon the presumption that the track is clear, without being responsible for the consequences.

4. ——: right to a clear track: liability for injuries.

Counsel for the defendant also object to the second instruction given for the plaintiff, for the 'reason that in the first paragraph thereof, it is declared to be the duty of railroad companies to exercise the greatest caution and skill in the management of their business. This degree of care and skill, it is asserted, can only be exacted where the relation of passenger and carrier exists, and cannot be required of the defendant under the circumstances of this case. Conceding that the standard of care set up in this paragraph is inapplicable to

5. ——: negligence: instruction.

Frick v. The St. Louis, Kansas City & Northern Railway Company.

the case at bar, still we do not conceive that it furnishes a sufficient reason for reversing the judgment in this case. .The language employed is not applied to the defendant in this case.   It is a· mere general declaration of an abstract truth applicable alike to all railroads, which might very properly have been omitted, under the view which we have taken of this case, but which does not, in our opinion, materially affect the merits of this controversy.

A similar declaration, though criticised, was tolerated by this court in the case of *Brown v. R. R. Co.*, 50 Mo. 467, under circumstances, where, we think, it was calculated to do greatly more harm than in the case at bar.   In the case of *Harlan v. R. R. Co.*, 65 Mo. 22, although the injury there complained of did not occur at a public crossing, it was said that it did occur in a crowded city, "where the public had a right to expect extraordinary care to prevent accident."   And in the case of *Stillson v. R. R. Co.*, 67 Mo. 671, although the injury there complained of did not occur at a street crossing, " but on a part of the track where there was not even a private or occasional pathway, and where, consequently, the defendant had a right to presume that no one would attempt to cross," this court said :   "The obligations, rights and duties of railroad companies and travelers crossing them are mutual and reciprocal, and no greater degree of care is required of the one than of the other.   *Harlan v. R. R. Co.; Cont. Imp. Co. v. Stead*, 95 U. S. 165.   Whilst the highest degree of care should be exacted from those who operate such dangerous machinery, a corresponding obligation is imposed on the public, outside of passengers on the train, to observe the like caution. *Harlan v R. R. Co.*, 65 Mo. 22."   And in *Bell v. R. R. Co.*, 72 Mo. 50, which was a suit for injuries inflicted in a town, but not at a crossing, an instruction embodying the declaration contained in the paragraph now under consideration, received the tacit approval of this court.

Inasmuch as the question now directly presented for adjudication was not specially brought to the attention of

the court in the cases cited, and cannot, therefore, be esteemed to be the point in judgment in those cases, we do not feel that we are departing from what can be regarded as the settled law of this court, in announcing the rule contained in this opinion. And we are of opinion that the defendant in this case had the full benefit of that rule.

The last paragraph or subdivision of the plaintiff's second instruction is the only point thereof which is in terms declared to be applicable to the facts in evidence, and that is in entire harmony with the first instruction given for the plaintiff, the fifth instruction given for the defendant, and the first instruction given by the court of its own motion, in each of which the jury were distinctly told that the defendant was liable only for a want of ordinary care. Under these circumstances we think the conjecture that the jury could have been misled by the first paragraph of this instruction is not at all probable.

The second instruction asked by the defendant was properly refused, for the reason that it exempts the defendant from liability unless the train could have been stoppe in time to have prevented the accident after the dangerous situation of the plaintiff was discovered. This instruction should have been qualified by adding after the word "discovered" the words "or by the exercise of ordinary care would have been discovered." *B. & O. R. R. Co. v. Trainor,* 33 Md. 542.

The fourth instruction asked by the defendant was properly refused by the court. In cases like the present,

6. ———. ———: where what constitutes a proper rate of speed
dangerous rate of depends upon the length and character of
speed: question
for the jury. the train, the location and particular surroundings of the track and other circumstances, and no law or ordinance regulating the speed of trains, and applicable to the case, is in evidence, whether the rate of speed is improper or dangerous, is a question of fact for the jury. *Bell v. R. R. Co.,* 72 Mo 54, 61.

We have carefully examined the cases cited by the

defendant, but do not deem it necessary to review them. Most of them are unlike the case at bar in its most essential features, and are, therefore, inapplicable. The case of *Singleton v. E. C. R. R. Co.*, 7 C. B. (N. S.) 289, though cited by this court in *Isabel v. R. R. Co.*, 60 Mo. 475, was not approved and is contrary to the weight of American authorities—*vide* Shear. & Redf. on Neg., § 493, note 4. In that case the driver saw the dangerous position of the plaintiff, a child three and a half years old, and made no attempt to stop the engine, contenting himself with merely turning on his whistle. The child's leg was cut off, and it was held that the company was not liable. The case of *Meeks v. R. R. Co.*, 52 Cal. 602, imputes negligence as a matter of law, to an infant six years of age.

Discovering no error in this record materially affecting the merits of the action, the judgment of the court of appeals will be affirmed. The other judges concur.