DONAHOE *et al.* v. THE WABASH, ST. LOUIS & PACIFIC RY. CO., *Appellant.*

1. **Railroad**: NEGLIGENCE: CHILDREN. Where the engineer of a railway train, running through the country, observes children on or near the track, it becomes his duty to use the same care and precaution as when running through a city. In such case he cannot act upon the presumption the track is clear, without being responsible for the consequences.

2. ———: ENGINEER: WARNING OF DANGER: CHILD. A railroad is liable, where its engineer who has received warning which gave notice of danger ahead and demanded the checking or stopping of the train, disregards such warnings and runs over and kills a child on the track, when by regarding the warnings he could have checked the train and averted the accident. And this is the case, although the parents of the child were negligent in permitting it to be on the track.

*Appeal from Chariton Circuit Court.*—HON. G. D. BURGESS, Judge.

AFFIRMED.

*H. S. Priest* for appellant.

Appellant's demurrer to the evidence should have been sustained because (1) there was no proof of negligence as charged in the respondent's petition. *Yarnall v. R. R.*, 75 Mo. 575; *Moore v. R. R.*, 4 Am. & Eng. Ry. cases, 569; *Morrissey v. R. R. Co.*, 126 Mass. 377. (2) Because of the palpable contributory negligence on the part of the respondents. *Bellefontaine Ry. Co. v. Snyder*, 24 Ohio St. 670; *Moore v. Metropolitan Ry. Co.*, 2 Mackey (Dist. Col.) 437; *Smith v. Ry. Co.*, 2 Am. &

Eng. Ry. Cas. 12; *Ry. Co. v. Brown*, 49 Ind. 154; *Hunt v. Greer*, 72 Ill. 393; *Callahan v. Bean*, 9 Allen 401; *Wright v. Ry.*, 4 Allen 283; *City of Chicago v. Starr*, 42 Ill. 174; *Morrison v. Erie Ry. Co.*, 56 N. Y. 302; *Ry. v. Hanlon*, 53 Ala. 70; *Ry. v. Brown*, 40 Ind. 545; *Ry. v. Huffman*, 28 Ind. 287; *Ry. v. Vining*, 27 Ind. 513. The first instruction given at the instance of respondents is obviously erroneous and misleading in the statement of the law applicable to the case. It ignores the issue of contributory negligence. *Clark v. Hammerle*, 27 Mo. 70; *Sawyer v. Ry.*, 37 Mo. 263; *Fitzgerald v. Hayward*, 50 Mo. 523. It was, also, misdirecting in the employment of the following language, viz : "And that the injuries to said child could have been avoided by the use of *proper care.*" It was the duty of the court to define for the jury in definite terms the measure of care required of the appellant. *Devitt v. Ry.*, 50 Mo. 305; *Marshall v. Shricker*, 63 Mo. 311; *Yarnall v. Ry.* 75 Mo. 583; *Wiser v. Chesley*, 53 Mo. 547; *Mueller v. Ins. Co.*, 45 Mo. 88. The respondent's second instruction was wrong. *Walters v. Ry. Co.*, 41 Ia. 78. No greater care is required to discover a child than an adult, but greater care would be required *after* the child was discovered than towards the adult. *R. R. v. Huffman, supra.* The instructions given by the court of its own motion were, also, erroneous. The first because (1) in assuming the child was in a dangerous position upon or near the track, and requiring the servants upon such declared fact to stop the train and pronouncing it negligence not to have done so; (2) in requiring care and watchfulness to discover the child upon or near the track. It, also, improperly holds appellant liable unless its servants "made use of all the appliances at their command to stop the train." *Bell v. Ry.*, 72 Mo. 61.

*U. S. Hall* and *John Montgomery* for respondents.

The instructions given by the court fully and directly

declared the law applicable to the case. It was the duty of the servants of appellant in charge of the train to have been at the time of the accident in the exercise of ordinary care and watchfulness, and if the accident could have been avoided by the exercise of such care, which they failed to use, the appellant is liable. *Gorman v. Ry.*, 26 Mo. 448; Shearman & Redf. on Negligence, sec. 477; *Frick v. St. L., K. C. & N. Ry. Co.*, 75 Mo. 595; *Isabel v. H. & St. J. Ry. Co.*, 60 Mo. 483; *Hicks v. Pac. Ry. Co.* 64 Mo. 439; *Maher v. A. & P. Ry. Co.*, 64 Mo. 276; *Brown v. H. & St. J. Ry. Co.*, 50 Mo. 467; *Butler v. Ry. Co.*, 28 Wis. 498; *Ry. v. Irish*, 72 Ill. 407; *Isbell v. Ry.* 27 Conn. 405; *Ill. Ry. v. Middlesworth*, 46 Ill. 498; *Marcott v. Ry.*, 4 Am. & Eng. Ry. cases, 448. The second instruction given for respondents and the sixth given for appellant declare the law as it has been time and again recognized and approved by this court. *Boland v. Mo. Ry. Co.*, 36 Mo. 489; *Stillson v. H. & St. J. Ry. Co.*, 67 Mo. 674; *O'Flaherty v. Union Ry. Co.*, 45 Mo. 73; *Isabel v. H. & St. J. Ry. Co.*, 60 Mo. 483; See, also, *Morgan v. Ills. & St. Louis Bridge Co.*, 5 Dillon 96, and cases cited. There was no contributive negligence to sustain the plea of defendant.

HENRY, J.—Plaintiffs sued defendant in the circuit court of Chariton county for negligently killing their child, near Centralia, in Boone county. The petition alleges that, on the 27th day of March, 1881, said child went upon the railroad, near the front of a section house in which the parents resided, and, without any fault, or negligence of plaintiffs was run over by a train of defendant's cars, in consequence of the negligence and unskilfulness of the servants of defendant in charge of said train. The negligence specially alleged was running the train at an unusual rate of speed, a failure to ring the bell or sound the whistle, or, by other means to avert the calamity, although repeatedly and timely

warned of the position of the child and its great danger.

The answer pleaded contributory negligence on the part of plaintiffs in permitting the child to go, unattended, upon or near the track, where there was no public street or highway, plaintiffs knowing that defendant's trains were frequently passing, and that the engine and train were, at the time, managed with ordinary care. On a trial of the cause, plaintiffs obtained a judgment from which this appeal is prosecuted.

The testimony for plaintiffs was substantially as follows: The child was about two and a half years old. Con Donahoe was, and for nearly four years had been, defendant's section foreman, and had lived in the section house when the child was killed about four years. On the day of the accident, Mrs. McAuliff, with two of her children were on a visit at Donahoe's. Mrs. Donahoe testified that she heard the train coming about four o'clock in the afternoon, and missing the children, stepped out on the track, which was about twenty-five feet from the house, to look for them. That her child had not been out of the house ten minutes when she heard the train, which was an extra freight going east. That when she first got on the track, the child was at the side of the track, about fifty yards west of her. "The train was about a quarter of a mile off when I first came upon the track, as near as I can tell. I saw some other children at or near the place where my child was, three of mine and two others; all of them were near the track where the child was; three other children were not very far from the track—about two feet, as near as I can tell; it was a warm, bright day; the ground at this point was smooth and level and the track straight; the country around is prairie land. When I first came on the track the train was moving toward my child; I made for my child as hard as I could run, with hands up and screaming; I ran on the track; there was no whistle sounded or bell rung and no letting off of steam at the cylinder

cock at the side ; I went up the track as fast as I could, making for my child ; had just stepped off the track when the train came up ; had not got hold of my child, only hold of the corner of his apron ; was trying to get hold of him to pull him off, when he was struck ; he was on the side of the track, climbing over the iron rail, aiming to cross the track."

Mrs. Ellen McAuliff testified that she was at the section house of Con. Donahoe at the time ; "the land there is level ; was in the kitchen with Mrs. Donahoe when I heard the train ; after hearing the train I held Mrs. Donahoe's baby ; when she hallooed to the children the train was coming ; I laid the baby down and came to the track and ran with her on the track toward the children ; both of us were throwing up our hands and hallooing all the time. When we first came out of the house we were thirty to fifty yards from the children ; the train was about a quarter of a mile from the children ; did not know whose child it was on the track ; we kept on the track until the train was so close we had to step off, and I saw Mrs. Donahoe make one grab at the child and missed him. She was struck by the engine and thrown by the ties in the ditch ; the cow-catcher struck the child, and I was right behind it and picked it up ; there was no bell ringing or whistle sounded, and no steam let off, until after the child was struck ; they whistled when they got to the east side of the section house, and did not come to a full stop until they got down near to the whistling post ; it was a nice, clear, sunshiny day."

Mrs. Elizabeth Gregg McAuliff testified as follows : "When I first saw Daniel Donahoe he was about six feet from the centre of the track ; when he was struck he was about four feet from the centre ; when I first saw the train I ran out upon the track and raised my hands and clapped them together ; it was a passenger engine." Cross-examination : "When I first heard the train I was with Mrs. Donahoe and Mrs. McAuliff in the house. When I went to the door they were on the track going

ahead, waving their hands, hallooing to the children to
go back. When I came out of the door I saw the train
coming, and I waved my hands. The train was coming
down the grade as fast as it could come. A passenger
could not have gone any faster. Saw the child as soon
as I came to the door. Was on the north side of track.
When the child was struck he was climbing up between
the ties; had his hands on the ends of the ties; it was
200 yards from where the child was struck before the
train was stopped; all the wounds I saw on the child
were on his face and head."

William Powers testified that an object, even a
chicken, could have been seen on or near the track at the
place where the child was killed, by a person standing
on the engine, a half a mile or more, and that he did not
notice that the speed of the train was slackened before
the child was killed. Mr. Donahoe's testimony was to
the same effect, as to the distance at which an object
could have been seen on the track that afternoon and the
testimony on that point is uncontradicted.

For defendant, T. Murray testified that he was en-
gineer on that train. But at the time of the trial had
been out of its employment seven or eight months.
"Train was going east and I sat on right or south side of
engine, which is the regular place for the engineer to sit.
I left Moberly with special train; about four o'clock, or
a little after perhaps, I got within a mile and a half of
Centralia station. The way was all clear, and I was run-
ning at a rate of 20 miles an hour, perhaps a little over
or a little under. There was nothing in the world be-
tween me and Centralia station; nothing alive on the
track. At that time the only thing that had life that
came within my vision from the engine was a party of
children, and what seemed to be two grown women on a
bank eight feet high, close to the fence. They were on
the north side on the opposite side from me, and my at-
tention was called to them because they were the only
objects moving. They stayed in my vision while I was

running towards Centralia, until I got a thousand feet from them, when one of the women seemed to leave the other and get down in the ditch on the north side of the track, on the opposite side from me and began to run towards the engine. I saw her, and following her motions, I cast my eye along the track, and saw nothing on the track; I still kept the woman in view, and she kept running and seemed to get more excited. I had my hand on the throttle, not that I saw any danger, but thinking something might turn up. At that time I was within 250 or 300 feet. I was keeping my eye on the track, and a little boy stuck his head up between the ties. I called for brakes, applied the air brakes, put sand on the rails and reversed the engine, and did everything possible to stop the train. By the time I did that I went to the left hand side. of the engine to see if the boy had stepped off; in place of that he had crawled on the ties and was standing on the end of the ties; directly after that he was struck. I went back to where the child was; the train stopped with the caboose about fifteen cars past where the accident occurred; there were ties scattered along the track, especially along the north side. When the boy was struck, being lifted by the pilot, he was thrown against his mother, and she fell over two ties which lay in a slanting direction against the bank."

In his cross-examination he says: "She seemed to be excited and running faster. The indications of her excitement were quick movements, moving her arms, running, and waving her hands; I don't think she had a shawl; I would not be positive. When she kept going that way, I pushed the throttle to shut off steam; I could not give any idea how close I was to her then, because I was watching her so closely; I kept my eye on the woman and cast my eye from the woman along the track; I had the steam shut off by this time, and the woman kept going and the train kept going; when about 250 feet from the child its head was stuck up from between the ties; it seemed to look around, and I immediately applied the

air brakes, opened the sand, reversed the engine, and it is very likely I called for brakes again ; I did everything in the world to stop the train ; it took me about six seconds to do all these things ; it took both hands to reverse the lever ; it depends on how many cars you have attached to the air-brakes how long it takes the hot air to get to the brakes and block them ; I had no cars attached to the air brakes ; it takes about a second or two to stop an engine ; I suppose the engine was checking speed in two seconds after I turned on the hot air ; I started the sand and reversed the engine ; was not pulling up grade ; when I struck the child it was about in front of the section house ; the length of time it will take twenty-three cars to stop depends on the state of the rails, state of the brakes, the weight of the cars and the speed you are going at ; I think in the present case, under the circumstances, the train ought to stop in 1,000 feet ; it ought to stop in 1,200, or 1,500 feet, as near as I can get at it ; it would be a good stop to stop in 1,500 feet ; I was not drunk that day nor asleep on my box ; I came back to the section house after the child was killed ; don't remember that I came back in my shirt sleeves ; I went in where the child was ; quit the service of the Wabash company about seven or eight months ago ; I quit the company voluntarily."

Other witnesses for the defence corroborated the testimony of Murray ; and McCabe, the conductor, testified that the first warning he had, was the call for brakes, about a quarter of a mile west of the section house ; it was a short sound of the whistle which indicates that brakes are to be set, and about the time he heard the whistle, he got hold of the brakes ; and the slack of the caboose ran up against the engine, as though something ahead was applied to stop it.

At plaintiffs' request, the court instructed the jury as follows :

(1) If the jury believe from the evidence that plaintiffs were husband and wife and the parents of

the deceased child, at the time of his death, and now are husband and wife, and the death of the child was occasioned through the negligence, unskilfulness and want of care on the part of the servants, agents and employes of defendant, in charge of and operating and managing and conducting a locomotive and train of cars upon the defendant's railway, and that the injuries to said child could have been avoided by the use of proper care, precaution and watchfulness on the part of the servants and employes, your finding must be for the plaintiff, and if you find for the plaintiff you must assess the damages at the sum of $5,000.

(2) The court further instructs the jury that the parents of said child were not prohibited from allowing him to go out upon the grounds adjacent to their dwelling house, even though it were close to the track of defendant's railway, in company with his sister and other small children, to play and enjoy the fresh air and sunshine; but in allowing them this freedom the plaintiffs were only required to use the same care and precaution to prevent them from going into dangerous places and receiving injury or harm, as ordinarily prudent people similarly situated would exercise as to their own children, and would deem adequate for this purpose; and although the jury may find that the plaintiffs were imprudent or careless in this respect, yet if the jury further find that the servants and employes of the defendant, in charge of said train, had they been exercising care and watchfulness, under the circumstances, could have seen and recognized the fact that it was a child, and could have stopped the train and prevented the injury, your finding must be for the plaintiff.

(3) Although the jury find from the evidence that the parents of the child were guilty of negligence in permitting their child to go upon the track of the railway, yet if the injury of said child could have been avoided after the employes learned of the danger in which said child was, or might have learned of his dangerous

situation by the use of reasonable diligence, then they must find for the plaintiff.

The following instructions were given for the defendant:

(5)   If the jury believe from the evidence that the persons in charge of the train were exercising ordinary care in running, conducting and managing the same, and that they did not discover the child upon the track or see it approaching the same, in time to prevent the injury complained of, then the plaintiff cannot recover in this action, and the finding must be for the defendant.

(6) If  the jury find  from the evidence that either of the plaintiffs in this action, negligently permitted the child in question to go unattended upon or across the track of defendant's railroad, where they knew its trains were frequently passing, then the plantiffs can not recover in this action, and the finding must be for the defendant, unless the jury further believe from the evidence that said child was wantonly or purposely injured by those in charge of the train, or that by the exercise of ordinary care they might have prevented said injury after they discovered said child upon or near said track.

(10)   Although the jury may believe from the evidence that at the time plaintiffs took possession of the section house in question, there was a fence between it and the railroad track, and  that defendant subsequently and prior to the injury complained of permitted or suffered said fence to be removed or go into decay, yet the fact that defendant may have suffered said fence to go into decay or be removed as aforesaid, does not constitute negligence on the part of defendant, and such fact should not be taken into consideration by the jury in determining the issues in this case.

(11)   The court instructs the jury that in the transaction of its business and in the operation of its railroad, the defendant has a lawful right to run its trains at any

rate of speed it may deem convenient or necessary; and, although the jury may believe from the evidence that defendant's said train was, at the time and place mentioned in the petition, running at a very rapid or high rate of speed, yet that fact did not constitute negligence on the part of said defendant and should not be taken into consideration by the jury in determining the issues in this case.

The court of its own motion gave the following :

(1) If the jury believe from the evidence that the said child went upon the defendant's track at a place where there was no public street or highway, and that while there it was struck and killed by one of defendant's trains, and if the jury further believe from the evidence that when the persons in charge of said train, and while in the exercise of due care and watchfulness, discovered said child upon or near said track, they reversed the engine and set the brakes upon the cars of said train as quick as they could, and that they made use of all the appliances at their command to stop said train and avoid injury to said child, and that said train did nevertheless strike and kill said child, notwithstanding said efforts to stop the same, then the plaintiffs cannot recover in this action, and the verdict must be for the defendant.

(2) Although the jury may believe from the evidence that the deceased was struck and killed by a train of defendant's cars, yet that fact does not authorize the jury to find a verdict for the plaintiffs in this action, and unless it has been proved to the satisfaction of the jury that after said child got upon the track, or its dangerous situation was discovered by those in charge of the train, or that they could have seen it by the exercise of ordinary care and watchfulness, and have stopped the same in time to have prevented the cars from striking it, then the finding must be for the defendant.

The court refused seven instructions asked by defendant, which will be noticed hereafter.

There are certain propositions of law which have

been so frequently asserted by this court that we only deem it necessary to state them. (1) If one be injured by a train of cars running against or over him, through the negligence of those in charge of the train, the company is liable,unless the injured party was guilty of negligence contributing directly to the result. (2) But,even if the party injured was guilty of contributory negligence, yet,if the persons operating the train,after discovering his danger, could, by the exercise of reasonable care, have avoided injuring him, the company is answerable. *Harlan v. Ry.*, 64 Mo. 480; *Same case*, 65 Mo. 22; *Maher v. Ry.*, 64 Mo. 267; *Hicks v. Ry.*, 64 Mo. 430; *Isabel v. Ry.*, 60 Mo. 480. There is, in this state, no controversy as to these propositions; but in *Harlan v. Ry.*, 64 Mo., and *Kelley v. Ry.*, 75 Mo. 140, and *Maher v.Ry., supra,* it was also held, that where the injured party was guilty of contributory negligence the company was not only liable if, after discovering his danger,it failed to use reasonable precautions to avoid injuring him, but that it was, also, liable if its failure to discover his danger, was in consequence of "the recklessness or carelessness of its employes, when the exercise of ordinary care would have discovered the danger." *Harlan v. R. R., supra.*

In *Hicks v. Ry., supra,* the language is "if guilty of negligence before, which created the impossibility" of discovering the danger to which the injured party was exposed. A similar expression occurs in the case of *Isbell v. Ry.*, 27 Conn. 403. The language employed in those cases requires some qualification or explanation. The *negligence* which prevents the employes from discovering ·the danger, that makes the company liable, is not negligence remotely antecedent to the infliction of the injury, but negligence occurring at or about the time of, and immediately connected with the disaster, under a state of facts equivalent, in law, to notice of the danger to which one is exposed. If negligence of a different character, antedating the accident, prevents the train

men from discovering the danger in which a person has placed himself on the track, and the company is still held liable because but for such negligence he might have been seen, the doctrine of contributory negligence is eliminated from the law. The case at bar aptly illustrates the distinction. No negligence is imputable to the train men, in running their train twenty or thirty miles an hour where the accident occurred, although this speed may have prevented them from seeing the child. Nor, if running at that rate of speed, they had neglected to keep a look out ahead, and in consequence of that neglect failed to discover the child near the track, would the company be liable to the *parents*, if the child was there through their negligence.

This, however, is not the character of negligence charged in the petition and proved at the trial. It was not antecedent, remote negligence, but negligence and carelessness in disregarding warnings given immediately before, and continued until the child was struck, warnings with reference to its condition of danger, and which clearly gave notice of danger ahead which demanded that the train should be checked or stopped. It is not going too far to say that the evidence tended to prove notice to the train men, especially to the engineer, that one or more of the identical persons seen by him were in danger. When he saw those children near the track, his duty was the same as if he had been running through a populous city where more caution is to be observed in running a train than in the country, because the train men may reasonably anticipate that there will be persons on the track; and when in the country, they observe children on or near the track, the duty of using the same precautions as when running through a city arises. In the case of *Frick v. R. R.*, 75 Mo. 610, it was observed that: "When there is reason to apprehend that the track may not be clear, notwithstanding the right of the company to have it clear, persons operating a train cannot act upon the presumption that the track is clear,

without being responsible for the consequences.'' The engineer had seen them near the track of the railroad. Immediately after that, he saw one of the women greatly excited, running on or near the track toward the train, gesticulating as she ran, throwing up her hands, and one of ordinary intelligence, in the engineer's place, seeing what he saw, would have concluded at once that some of those persons were in such peril that the train should be stopped, or its speed checked. He says that he put his hand upon the throttle "thinking something might turn up.''

If the defendant is liable in this case, it must be because of the negligence, which might be characterized as recklessness of its servants, occurring at the time the child was killed. This, at last, is but negligence, and a rigid adherence to a strict construction of the rule that, if the injured party was guilty of contributory negligence, the company is not liable, although, also, guilty of negligence, would exonerate the defendant; if the jury should find that the train men did not, in fact see the child, notwithstanding they should, also, find, that they might and would have seen it, and saved its life, if they had heeded warnings which a prudent man would have regarded.

It remains to be considered whether the instructions given for plaintiff are in harmony with the principles above announced. The principal objection urged to plaintiffs' first is, that it ignores the alleged contributory negligence of the plaintiffs, and authorizes a recovery without regard to that question. It may be conceded that plaintiffs were guilty of contributory negligence, but even if that question had been submitted to the jury in that instruction, as it was in the second given for defendant, numbered six, and the second and third given for plaintiffs, the result must have been the same, on the law as declared, and properly, we think, in the plaintiffs' second and third instructions, which were in substance, that although the jury should find that plaintiffs

were guilty of contributory negligence, yet if the train men saw the child, or might have discovered its dangerous situation by the exercise of reasonable care in time to have avoided striking it, plaintiffs were entitled to recover. *Under the circumstances of this case*, these instructions were properly given; and if the court had expressly declared to the jury, that the facts proved constituted negligence on the part of plaintiffs, it could not have helped defendant, because the verdict of the jury on the uncontradicted evidence with respect to the conduct of the train men, must have been in plaintiffs' favor.

The court, keeping within its province, might have told the jury, that the train men were guilty of such negligence occurring immediately before, and continuing up to the time of the accident, as made defendant liable. In other words, that they had notice that the life of a human being was in danger, and that the train should be stopped, or its speed materially checked, and that this notice was given in time for the train men to stop, or check the speed of the train, and avoid striking the child. No effort was made to check the speed of the train, until within six hundred feet of the child, and no call for brakes was made until within a much shorter distance. These instructions, given in cases similar to those of *Harlan v. R. R.*, and *Hicks v. R. R.*, *supra*, and others of that class would be erroneous. Instructions must be adapted to the evidence in the case on trial.

The first instruction given by the court of its own motion, is objected to as holding defendant liable, "unless its servants made use of all the appliances at their command to stop the train." It does not declare the company liable unless it used all the appliances at its command, but that if it did use them, *it was not liable*. But suppose it had so declared, it would have but declared the duty of the train men, under the circumstances. It was no such sudden emergency with which the engineer was confronted as deprived him of his pres-

ence of mind.  He placed his hand upon the throttle, "thinking that something might turn up" and had then but to call for brakes to check the speed of the train. He seems to have been calm and collected, and had ample time to use all the means provided for stopping the train.  It was not a case in which the " judgment had to be formed instantaneously."

To recur to the facts, and instructions are to be considered in the light of the facts, from a point from a quarter to a half mile west of the section house, the engineer saw the children and two women near the track. When within, he says, 1,000 feet of them, he saw one of the women running on or near the track, toward the engine greatly excited, throwing up her hands and her actions were such that he placed his hand upon the throttle, "thinking something might turn up," and if he had then called for brakes the life of the child would have been saved, and the mother would have escaped injury.  If the train had been approaching a bridge, or trestle over which it was to pass, it is not to be supposed that the train men would have disregarded such warnings as were given here.  The instruction in question declared that, if, in the exercise of due care and watchfulness, the train men discovered the child upon or near the track, and reversed the engine and set the brakes as soon as they could, and made use of all appliances at their command to stop the train, and the train did nevertheless strike and kill it, plaintiffs are not entitled to recover.  The instruction was predicated upon the evidence of the engineer, that all the means mentioned in the instruction, were actually employed to stop the train, after he saw the position of the child, and we see no grounds defendant has to complain of it.

Number six, given for defendant, it is insisted, is in conflict with those given by the court of its own motion. The conflict, however, is but apparent.  Number six for defendant, declares that if plaintiffs were guilty of contributory negligence, the finding must be for defend-

ant, unless the child was wantonly or purposely injured, or by the exercise of ordinary care the train men might have prevented the injury after discovering the child's danger, while those given by the court of its own motion, contain the addition that defendant was liable "if the train men could have seen it, by the exercise of ordinary care." The view of the court manifestly was, that when, but for gross negligence, such as was proved in this case, the injured party would have been seen by the train men, it is, in law, the same as if he had been seen by them, and on no other hypothesis, consistent with the doctrine of contributory negligence can defendant be held liable. But, even if there is a conflict, the error in the instructions is contained in that given for defendant in denying the liability of defendant, unless the child was seen on the track by the servants of the company. Those given for plaintiffs were correct and defendant cannot complain when it is manifest that the verdict was rendered upon proper instructions. There is no conflict of evidence with regard to the efforts of the mother of the child to have the train stopped. The engineer testifies to them. What more she could have done, it is difficult to conceive. She risked her own life, and was seriously injured in the attempt.

We have considered this case, with respect to her efforts to have the train stopped, on the engineer's own testimony, but when that of Mrs. Donahoe and Mrs. McAuliff is considered and given its weight, a stronger case, if possible, is made against the defendant. That the engineer should have proceeded with the train without heeding the warnings which he testified were given would be almost incredible if he had not himself testified to the facts. The judgment is affirmed.