122 141
100a ²668

GURLEY v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

Division Two, May 24, 1894.

1. **Railroad:** INJURY AT CROSSING: CUSTOM: EVIDENCE. Where, in an action for personal injuries received on a walk leading over a railroad track to its depot and caused by the sudden pushing together of cars that stood apart on each side of the walk, the petition charges that by a long continued course of conduct the railroad had led plaintiff to believe that it had opened the space between the cars in order that he and the public might pass between them, it is not error to permit a witness to testify as to the company's custom in giving signals when desiring to place cars on its track or to move them over it at the crossing.

2. ———: ———: EVIDENCE: DAMAGES. Where the petition in such case alleges that plaintiff's thigh and leg were crushed and "that by reason of said injuries he had suffered great bodily and mental anguish and has been unable to follow his business or to perform any kind of labor," it is not error to permit plaintiff to testify to the damage he had suffered from his inability to earn such wages after his injury as he had received prior thereto.

3. ———: ———: ———: ———. Where it was shown that after a former trial, plaintiff's arm was palsied and physicians testified that it was the result of the injuries to the nerves of the leg, evidence of such injury was not inadmissible because it was not expressly charged as a separate element of damages.

4. ———: ———. Where a railroad permitted the public to use a crossing for twenty years leaving a space between its cars for persons to pass through and plaintiff having approached the crossing stopped and listened and hearing nothing passed between the cars when without warning they suddenly came together and injured him, *held*, that, the question of negligence having been fairly submitted to the jury by the instructions, a verdict for the plaintiff will not be disturbed.

*Appeal from Bates Circuit Court.*—Hon. James H. Lay, Judge.

Affirmed.

*H. S. Priest* and *H. G. Herbel* for appellant.

(1) The court erred in admitting the testimony of the witnesses, F. D. Mers and Geo. H. Short, regarding the custom of defendant's employees to give signals when placing cars on the house track, and of plaintiff regarding his loss of earnings and of plaintiff and his witnesses Drs. Cundiff, Shuttleworth and Grant regarding the paralysis of his arm, against the objections of defendant. *Gahagan v. Railroad,* 1 Allen, 187; *Tenney v. Tuttle,* 1 Allen, 186; *Field v. Railroad,* 76 Mo. 614; *County v. Railroad,* 22 S. W. Rep. 572; *Mellwitz v. Railroad,* 62 Hun, 622; *Railroad v. Hurley,* 12 S. W. Rep. 226; *O'Leary v. Rowan,* 31 Mo. 119; *State v. Blackwell,* 51 Mo. 319; *Morgan v. Durfee,* 69 Mo. 479. (2) The court erred in overruling the demurrers to the evidence interposed by defendant at the close of plaintiff's case and of the whole evidence. *Gurley v. Railroad,* 104 Mo. 228; *Ruschenburg v. Railroad,* 109 Mo. 117; *Corcoran v. Railroad,* 105 Mo. 399; *Hudson v. Railroad,* 101 Mo. 13; *Kelly v. Railroad,* 88 Mo. 547; *Hixson v. Railroad,* 80 Mo. 340; *Stilson v. Railroad,* 67 Mo. 671; *Hickman v. Railroad,* 47 Mo. App. 73; *O'Donnell v. Railroad,* 7 Mo. App. 192; *Railroad v. Plaskett,* 47 Kan. 107; *Flynn v. Railroad,* 53 N. W. Rep. 494; *Bird v. Railroad,* 48 N. W. Rep. 691; *Andrews v. Railroad,* 46 Am. and Eng. Railroad Cases, 171; *Railroad v. Pinchin,* 31 Am. and Eng. Railroad Cases, 592; *Lewis v. Railroad,* 38 Md. 588. (3) The court erred in giving the instructions asked by plaintiff. *Field v. Railroad,* 76 Mo. 614; *Dowell v. Guthrie,* 99

Mo. 663; *Yarnell v. Railroad,* 113 Mo. 579; *James v. Railroad,* 107 Mo. 485; *Gurley v. Railroad,* 104 Mo. 228; *Newman v. Railroad,* 38 Fed. Rep. 819. (4) The court erred in refusing to give the instructions asked by defendant. Cases cited under point 2; *Barker v. Railroad,* 98 Mo. 50; *Humbird v. Railroad,* 110 Mo. 81; *Davitt v. Railroad,* 50 Mo. 305; *Dowell v. Guthrie,* 99 Mo. 662; *Way v. Railroad,* 34 Am. and Eng. Railroad Cases, 236. (5) The verdict is excessive and should have been set aside on defendant's motion. *Sleete v. Railroad,* 55 N. W. Rep. 137; *McDowell v. Fraull,* 53 Fed. Rep. 844; *Hamilton v. Branfoot,* 52 Fed. Rep. 390.

*S. P. Francisco, Wm. L. Jarrott* and *A. A. Whitsitt* for respondent.

(1) The railroad company, for more than ten years prior to the date of plaintiff's injuries, built and thereafter maintained a plank sidewalk leading from the Planters' House across the track where plaintiff was hurt to the defendant's depot. This was a continuation of the public sidewalk on Miller street. The public had, therefore, acquired an easement across defendant's side track, and plaintiff was not there as a trespasser. *Zimmerman v. Snowden,* 88 Mo. 220, 221; *Autenrieth v. Railroad,* 36 Mo. App. 254; *Byrne v. Railroad,* 104 N. Y. 362. (2) Even if the place where plaintiff was injured was not a public crossing, it does not follow that defendant had the right to negligently run its cars over persons who had been in the habit of crossing there. Greater care is to be exercised in running trains in towns and cities than is required in the country. *Gurley v. Railroad,* 104 Mo. 211. (3) The acquiescence of a railroad company in the habit of certain persons crossing at a place, amounts to a

license, and imposes a duty upon said company, as to all persons so crossing, to exercise reasonable care in running its trains so as to protect them from injury. The sufficiency of the notice and warning required at such crossing is a question for the jury. *Swift v. Railroad*, 45 Am. and Eng. Railroad Cases, 180, 183. (4) The injury occurred at a place where the company had been permitting persons to cross its track, without objection, and the company after separating its cars at said crossing, had no right to close said opening without giving suitable and reasonable warning. This is true even if it should be held that the injury happened at a point remote from a public street or highway. *Barry v. Railroad*, 92 N. Y. 289; *Byrne v. Same*, 104 N. Y. 362; *Phillips v. Railroad*, 46 N. W. Rep. 543; *Brown v. Railroad*, 50 Mo. 461; *Railroad v. Troutman*, 6 Am. and Eng. Railroad Cases, 117; *Herriman v. Railroad*, 32 Am. and Eng. Railroad Cases, 37; *Taylor v. Railroad*, 28 Am. and Eng. Railroad Cases, 656. (5) If a railroad corporation so constructs a private crossing over its track, at a grade in a city, as to hold it out as a suitable place for footmen to cross, it is bound to use reasonable precautions to protect them while so crossing. *Murphy v. Railroad*, 133 Mass. 121; *Sweeney v. Railroad*, 92 Mass. 368. (6) In the case at bar the company for twenty years had used, and by implication had invited the public to use, this sidewalk as a crossing and public passway from Miller street to its depot platform, and an obligation was imposed upon the company to see that it should not become a source of danger to those to whom it had held out as a passage or way through which they might safely go, and a duty was imposed upon the company of notifying persons entitled or invited to use it, in some unmistakable way, that it was about to be closed, before closing it. *Railroad v. Fitspatrick,*

35 Md. 38; *Gillis v. Railroad*, 59 Pa. St. 129; *Kay v. Railroad*, 65 Pa. St. 269. (7) Defendant signally "failed" to comply with the foregoing requirements, and was, therefore, guilty of negligence, which directly contributed to plaintiff's injury, and plaintiff was free from contributory negligence. *Nichols v. Railroad, supra; Donohue v. Railroad*, 91 Mo. 363; *Ernst v. Railroad*, 35 N. Y. 27; *Petty v. Railroad*, 88 Mo. 318; *Johnson v. Railroad*, 77 Mo. 546; Shearman & Redfield on Negligence [3 Ed.], sec. 31; *O'Conner v. Railroad*, 94 Mo. 157; *Kennayde v. Railroad*, 45 Mo. 261; *Tabor v. Railroad*, 46 Mo. 356; *Louks v. Railroad*, 31 Minn. 534. (8) The admission of evidence as to plaintiff's earning and loss of time under the allegation in the petition, was proper. *Railroad v. Dale*, 76 Pa. St. 47; *City v. Campbell*, 67 U. S. 592; *Luck v. Ripon*, 52 Wis. 196; *Logansport v. Sustice*, 74 Ind. 379; *Metcalf v. Baker*, 57 N. Y. 662; *Geveke v. Railroad*, 57 Mich. 589; *Co. v. Nichols*, 33 N. J. Law, 437; *Stafford v. Oscaloosa*, 64 Iowa, 251; *Nones v. Northouse*, 46 Vt. 587.

GANTT, P. J.—This is an action for personal injury. This is the third appeal in this court. Plaintiff obtained a verdict and judgment in the circuit court, on the first trial, for $10,000, and the judgment was reversed and remanded. 93 Mo. 445. The second trial resulted in a verdict for $15,000, and the judgment was reversed and the cause remanded. 104 Mo. 211. At this last trial plaintiff recovered judgment for $6,000, and defendant again appeals. Since the appeal was taken plaintiff has died, and his administrator, B. A. Bamard, has been duly substituted on the record.

The injuries of plaintiff were received at Pleasant

Hill on the night of January 22, A. D., 1885. The place of the accident was in the most populous part of the city. The defendant's depot was located between the house track and the main line track of its railroad. The principal street of the city led from the resident portion of the town to the Planters' House. The Planters' House was located at the end of this street. Connected with this street, in the front of the Planters' House, was a wide, plank sidewalk leading from the end of Miller street at the Planters' House across defendant's house track, and connecting with the depot platform. This plank walk was a continuation of the sidewalk on Miller street. There were a number of cars standing on the house track during the entire day preceding the night of the accident. These cars were separated at this plank sidewalk so as to permit footmen to use this walk when crossing the railroad. The cars were separated over this walk leaving from three and one-half to four feet between the drawheads. They had been separated in this manner for several hours before plaintiff attempted to pass between them, *and were separated immediately over this walk.* A short time before plaintiff attempted to cross the railroad at this point, two ladies walked side by side over this walk and through this opening. The testimony tended to establish the fact that the cars were in this condition two minutes before plaintiff attempted to pass between them. The public had been using this plank sidewalk, and the company had been separating its cars at this point so as to permit the public to use this walk, for more than twenty years. More people passed over this walk than at any other railroad crossing in the city.

On the defendant's passenger train was the usual mail car and railroad postoffice. At the time of the injury plaintiff had started to the depot to deposit a

letter on the mail car.  He, came from the resident portion of the town, and walked on this walk leading from the Planters' House until he reached this house track.   When he reached the intersection of the railroad track by the plank walk, he stopped and looked and listened, he said, for the purpose of realizing whether there would be any danger in the effort to cross between the two cars, standing as we have above described them.   He heard nothing, saw nothing, saw no headlight, no lamp signal, although the way was perfectly open in both directions up and down the track.   He heard no noise of switching.   He endeavored to accomplish the crossing; as he got in between the cars, he heard a rattling noise, and was immediately crushed by the coming together of the two cars between which he endeavored to pass.   Just as he stepped between the rails a switch engine was kicked and knocked against the cars at the northwest end of this house track, and caused them to come together and strike the cars over this crossing.   They struck plaintiff just as he was attempting to cross, caught him between the drawheads of the two cars, mashing and mangling his left leg and inflicting serious and permanent injuries.

By reason of said injuries plaintiff was confined to his bed for nearly three months, and was not able to perform any kind of work for more than one year, and continued to suffer excruciating pain up to the time of the trial, and the testimony showed that he would continue to suffer, and that the injuries would grow worse until death.   At the time of the injury plaintiff was a strong, healthy man; was earning about $5 per day as traveling salesman for the Missouri Glass Company. During the time of his sickness he incurred liabilities and expended large sums of money in attempting to cure himself of his injuries.

At this last trial it was shown that plaintiff's left arm was palsied, and a number of physicians testified that, in their opinion, this palsy was the natural result of the injury to his nervous system by the shock and hurt received in the wounding and mashing of his leg. There was evidence on part of defendant tending to show the space between the cars at the crossing had been closed to such an extent that a man could hardly pass through it, just prior to the time plaintiff was hurt.

For the plaintiff, the court in its first instruction, in substance, directed the jury, that if this walk and crossing across its house track had been maintained and permitted by defendant for more than ten years without objection, and that defendant, during that time, was in the constant habit of separating its cars at this walk so as to provide a crossing for footmen who might desire to pass that way, and that on the night of the accident plaintiff was attempting to go to defendant's depot to mail a letter on defendant's train, in a mail car therein, and that defendant had left an opening between said cars for the public to pass over, as it had for ten years, and that defendant had been in the habit of ringing a bell or giving some kind of warning before closing said crossing or putting cars in on said track, and that when plaintiff came to this crossing these cars were so separated as to induce plaintiff and the public to believe defendant intended they should use it for a crossing, and that plaintiff did so believe, then plaintiff was justified in acting upon this implied invitation and defendant owed plaintiff the duty of giving some reasonable or suitable warning before closing said opening; and that before venturing in, plaintiff stopped, looked and listened for indications of movement of said cars, and that he heard none, and that in attempting to pass on said crossing he was

caught by said cars being pushed together by defendant's servants without warning or notice, and his leg mashed, whereby he received the injuries complained of he was entitled to recover. The defendant asked a demurrer to the evidence. The other instructions will be noticed in the further discussion of the case, under the several assignments of errors by defendant.

I.   The first ground assigned for reversal is the admission of evidence. The court permitted witness Mers to testify in regard to the custom of the company in regard to separating these cars at this crossing. He testified without objection that it was the custom of the company to leave an opening at this crossing; the operatives pulled the pin, and opened the cars. Sometimes it was wide, sometimes narrow. He was then asked, without objection, what was the custom as to giving signals when the agents of the company desired to put cars on this track or move them over it, and he answered it was their orders and they always kept the bell going when doing that work. He was then asked what was their custom as to giving signals on this track and an objection was interposed to his testifying as to what was the custom. No ground or reason was assigned for the objection or in what respect it was incompetent.

There was no error in the ruling of the court overruling the objection. The pith of the petition was that by a long continued course of action the defendant had led plaintiff to believe that it had opened this space between its cars over this much used sidewalk, in order that plaintiff and the public could pass that way, and to make this proof this evidence was offered to show, not only that the company constantly left an opening there, but that it always gave a signal or warning of its intention to close it up. We think the evidence was pertinent and competent, not only to show negligence

in the company in changing its course of conduct, without notice or warning, in a matter so liable to produce serious injury to those who knew of and relied upon this long continued custom, but also to rebut the suggestion, or plea of contributory negligence by plaintiff in going through said opening. *Gurley v. Railroad*, 104 Mo. 232; *Nichols v. Railroad*, 32 Am. and Eng. Railroad Cases, 27.

Indeed, in view of the evidence of Mr. Gowdy, who has been the station agent at Pleasant Hill since 1876, there would seem to be no question as to the custom of making the passage for the public. He testified that it was his custom to separate the cars so that the public could go through, and that this opening was there nearly all the time. He says that on the evening Mr. Gurley was hurt, the space was open between the cars about three and one half to four feet; that he went to supper about 6 o'clock and returned about 7 o'clock, passing through this opening going and coming. He says, moreover, that the company laid planks between its rails to connect its platform with the sidewalk coming down from the hotel to its depot. The proof that its agents generally obeyed the dictates of prudence and humanity by warning those who habitually used this crossing by the consent and invitation of the company, could not have injured defendant; and the same character of evidence was admitted, without objection from the witness Bermington and the plaintiff Gurley, but when this case was here on the second appeal, we held that if the company so arranged its cars at this crossing as to invite the public to pass between them, it was its duty to give some reasonable or suitable warning of its intention to close the opening, when it desired to move its cars over it, so that whether the company was in the habit of giving warning or not, it was its plain duty so to do, under such circumstances. The aver-

ment of the petition was sufficient basis for the evidence.

II. It is also claimed that error occurred in permitting plaintiff to testify to the damage he had suffered from his inability to earn such wages after his injury as he had obtained prior thereto, because no sufficient foundation was laid in the petition. The averments, after stating his thigh and leg were mashed and crushed, were, "that by reason of said injuries, plaintiff had suffered great bodily and mental anguish, has been unable to follow his business or perform any kind of labor." As to this objection, the following questions and answers were given without objection or exception:

"*Q.* Now, what effect, if any, has this injury had on your capacity and ability to follow your business, or to perform any kind of labor? *A.* As far as the business I have been in, through the kindness of the Missouri Glass Company, I have been permitted to work for them some, but I can't earn more than $1 a day on an average; some days I make a little more, but it will average about $1 a day."

But there was no error in admitting the testimony. In *Smith v. Railroad*, 119 Mo. 246, the allegation was "and has been deprived of her means of support;" and it was ruled by this court, in an opinion by Chief Justice BLACK, that the plaintiff had a right to give in evidence her earnings in the usual course of her business. In *Britton v. St. Louis*, 120 Mo. 437, a similar ruling was made, where the allegation was that plaintiff was incapacitated from work and labor, and, besides loss of time, was put to great expense. *Slaughter v. Railroad*, 116 Mo. 269, is not in conflict herewith; neither is *Coontz v. Railroad*, 115 Mo. 672.

III. It appeared that since the last trial the plaintiff's left arm was palsied as a result of paralysis. Defendant insisted that evidence of this injury should

not go to the jury, because it was not specifically charged as a separate element of damage. We do not think this objection can be maintained in view of the specific allegation of the mashing and crushing of the leg causing permanent and irreparable bodily injuries, and the testimony of all the physicians that this *paralysis agitans* was the result of the injuries to the nerves of the leg. It was so apparent when the objection was made, that the learned trial judge was compelled to say that he could not exclude the paralysis from the jury because there was a physical profert of it in their presence, and thereupon plaintiff's attorney undertook to show that it was the result of the injury charged in the petition. The evidence was offered and the physicians sustained the offer. Under these circumstances, we think the allegation of the exact character of the wound and the averment of the permanent nature of the injury resulting was sufficient. We know of no rule of law that requires a plaintiff to state every matter that may enhance his damages. *Myers v. St. Louis*, 82 Mo. *loc. cit.* 378.

At common law, in an action for trespass for breaking and entering plaintiff's house, he may give in evidence without pleading it specially, under the general allegations of "other wrongs," the debauching of his daughter, or the battery of his servants; but clearly we think in the light of this expert evidence that this was a natural result to be expected, and by one physician predicted as a consequence when he first examined and attended plaintiff after his injury. It was competent evidence. With the exception of the statement of one of the physicians on cross-examination, that he had never known such a result in his practice, the burden of the testimony of the medical men was that this paralysis was the natural result of plaintiff's injury.

IV. The case made on this appeal is essentially different from both of the former appeals. The plaintiff amended his petition and charged that defendant by an unbroken and consistent custom, extending through a period of twenty years, had invited the public to use this passway between its cars and that plaintiff had known of this custom since 1871 and, relying upon the acts and conduct of defendant, he attempted to pass through said opening over said crossing, and without negligence or fault on his part was mashed and crushed and received permanent and irreparable injuries, through the negligence of defendant's servants in suddenly moving its loose cars over said crossing just as plaintiff was passing without notice or warning.

The evidence is without contradiction that for twenty years the defendant not only permitted the public to pass over this crossing with its knowledge, and without protest, but its own agent, Mr. Gowdy, testified that it constructed a sidewalk between its rails to conform to the walk coming down from the hotel to its depot; that he kept a space opened between the cars for the public travel. Indeed the great weight of evidence was that more citizens of Pleasant Hill used this crossing than any other crossing in the city. In view of the character of the evidence now, and it is unimpeached, as to the public use of this walk and crossing, no one could be charged with negligence in using it. The agent himself, who directed its opening, passed through it that evening going and returning from his supper as late as 7 o'clock. It was shown that two ladies walking side by side passed through it only a few minutes before Mr. Gurley was hurt.

When he approached it, he testifies, he stopped, listened, heard nothing and passed between the cars, when they were suddenly closed on him, crushing his

La Grange Butter Tub Co. v. Nat. Bank.

leg. All these matters were fairly submitted to the jury, especially the question of his contributory negligence, and we think fully justified the jury in finding that the act of defendant in suddenly kicking its cars over this crossing, without warning, was negligence for which it must respond.

We have gone through the very carefully prepared brief and argument of counsel for defendant and we find no material error in the action of the circuit court. The cause was carefully tried in accordance with the views we expressed on the former appeal, and the verdict does not, in the least, appear to be affected by passion or prejudice. The judgment is affirmed. All concur.